OCEAN POOL SUPPLY COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ocean Pool Supply Co. v. Commissioner
Docket No. 1535-70.
United States Tax Court
T.C. Memo 1974-182; 1974 Tax Ct. Memo LEXIS 137; 33 T.C.M. (CCH) 784; T.C.M. (RIA) 74182; July 10, 1974, Filed. Robert Ash, Carl F. Bauersfeld, and John C. Hendricks, for the petitioner. Rufus H. Leonard, Jr., and Curtis W. Berner, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioner's Federal income tax as follows: Taxable Year Ended August 31
Amount 1966
$32,333.19
1967
40,720.08
Some of the adjustments made by the Commissioner in his statutory notice of deficiency have been conceded by the parties. The sole issue remaining for decision is whether the amounts of compensation paid by petitioner to its president, E. L. Keuerleber, in the taxable years ended August 31, 1966, and *138 August 31, 1967, constitute a reasonable allowance for salary deductible under section 162(a) (1). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits are incorporated by reference. Petitioner is a New York corporation with principal place of business in Huntington Station, New York. Its principal business activity is the manufacture and sale of professional swim wear, swimming pool supplies and accessories. Petitioner's sales activities are conducted primarily through local salesmen and a mail order catalog. Petitioner filed its Federal income tax returns for the taxable years involved with the district director of internal revenue at Brooklyn, New York. Petitioner maintains its books and records and files its income tax returns on the accrual method of accounting. Edward L. Keuerleber is the president and general manager of Ocean Pool.He has held the position of general manager since the company was organized in 1938, and since 1951 he has been the president and sole shareholder. Keuerleber's educational background included *139 graduation from high school, a three-year course at Pace Institute, New York City, where he studied accounting, and additional courses at City College, New York. After completing his education, Keuerleber was employed by Arthur Young and Company, certified public accountants, for one year. He then began work for Ocean Bathing Suit Company, a corporation which manufactured and sold high-style [2] knit swimming suits. While employed by Ocean Bathing, Keuerleber worked as a cost accountant and was assistant to the vice president. When Ocean Bathing ceased business in 1938, Keuerleber and Alfred Murphy decided to organize a swim wear business but, unlike Ocean Bathing, they chose to concentrate on professional tank suits to be sold to schools and colleges. Murphy supplied the capital and was the sole shareholder and president and Keuerleber served as general manager. They operated under a compensation arrangement whereby Keuerleber would receive a salary of $40 per week and 40 percent of the profits, while *140 Murphy would receive 60 percent of the profits. They organized a new corporation, Ocean Pool Supply Company, Inc., petitioner herein. Ocean Pool first leased space in three separate buildings in New York City. The operation began on a small scale, with sales for the first year of $9,200. Sales rose steadily to annual sales of $237,000 in 1951. Until 1951, the company's products were sold in New York, Connecticut and New Jersey. Murphy and Keuerleber agreed that if anything should happen to Murphy, Keuerleber would be allowed to purchase Murphy's stock in Ocean Pool at book value. In 1951, Murphy died and, pursuant to such agreement, Keuerleber purchased Murphy's stock from his estate at the then book value of $45,000. When Keuerleber purchased the stock on March 17, 1952, the stockholders' equity of petitioner consisted of the following: Capital stock
$ 3,000.00
Paid-in suprlus
1,000.00
Surplus
40,971.37
Total stockholders' equity
$44,971.37
Keuerleber thereupon became president and sole shareholder of petitioner and continued in his role as general manager. He has continued to be the sole shareholder through the years in issue. Since 1951, *141 petitioner, under the management of Keuerleber, has expanded its marketing areas to include the entire United States and foreign countries and has considerably expanded its lines of merchandise to include such items as swimming pool supplies and equipment. In addition, petitioner is a member of several trade associations and actively participates in trade shows conducted throughout the United States. In 1951, Keuerleber was in complete charge of the management of petitioner. He has been and continues to be in charge of sales, distribution, manufacturing and the financial affairs of the corporation. In addition, he personally designs and supervises the manufacture of many new swim products and is in charge of compiling the annual sales catalog which, in 1966 and 1967, contained over 2,200 items. In 1963, the company abandoned its leased premises in New York City and moved to Huntington Station, New York. [3] During the taxable years in question, petitioner maintained an average weekly payroll of employees that varied from 35 to 60. Approximately one-half of the employees were engaged in the manufacturing phase of the business. Petitioner obtained many of its manufactured items *142 by subcontracting such manufactures with plants in Florida and Philadelphia, Pennsylvania. Much of petitioner's "manufacturing" consisted of packaging and minor assembly work as opposed to manufacturing from raw materials into finished products. During the taxable years in question, Joseph E. Colasuono (E. L. Keuerleber's son-in-law) was employed by petitioner as vice president in charge of soft goods, and Lee Keuerleber (E. L. Keuerleber's son) was employed by petitioner and in charge of hard goods [4] and was also treasurer. Colasuono began working for the company in the early sixties but had only been an officer since 1965. Both of the officers reported directly to E. L. Keuerleber. Lee Keuerleber received a base salary and, *143 in addition, a bonus at the end of the year, depending upon the success of the business. Colasuono received a base salary plus a percentage of the profits. The compensation paid by petitioner to its corporate officers other than E. L. Keuerleber from the fiscal year ended August 31, 1965, when they became officers of petitioner, to the fiscal year ended August 31, 1970, inclusive, was as follows: Joseph E. Colasuono Vice President
Lee Keuerleber Treasurer 1965
$19,111.04
$ 14,110.06
1966
18,504.59
14,760.00
1967
19,397.25
17,890.00
1968
20,791.12
21,307.00
1969
23,777.93
23,760.00
1970
24,423.80
24,786.00
The compensation paid E. L. Keuerleber for the taxable years in issue was voted upon at special meetings of the board of directors on October 20, 1965 (for the taxable year ended August 31, 1966) and October 10, 1966 (for the taxable year ended August 31, 1967), respectively. For the taxable years in issue, the board of directors consisted of E. L. Keuerleber, Joseph E. Colasuono and Lee Keuerleber. At the October 20, 1965, meeting the board voted E. L. Keuerleber an annual salary of $110,000 for the upcoming fiscal year and declared *144 a cash dividend of 35 cents per share on the 5,000 shares outstanding. At the October 10, 1966, meeting the board voted E. L. Keuerleber an annual salary of $115,000 for the upcoming year and declared a cash dividend of 38 cents per share on the 5,000 shares outstanding. A schedule reflecting the compensation paid by petitioner to E. L. Keuerleber for the taxable years ended August 31, 1951 through August 31, 1971, its net sales, taxable income before deduction of E. L. Keuerleber's salary, taxable income, Federal income taxes, dividends and increase in surplus is as follows: Fiscal Year Ended Aug.31
Net Sales
Income Per Corporate Tax Returns Before Deductions of Salary of E. L. Keuerleber
Salary of E.L. Keuerleber
1952
$263,363.28
$26,686.11
$ 20,000.00
1953
329,424.81
42,317.53
25,000.00
1954
415,996.93
49,532.97 33,000.00
1955
486,075.29
72,191.64
37,500.00
1956
593,084.99
91,443.95
50,000.00
1957
704,126.87
120,795.14
60 ,000.00
1958
779,750.68
155,051.34
75,000.00
1959
993,939.80
165,938.63
90,000.00
1960
1,392,021.93
194,650.09 100,000.00
1961
1,521,881.51
199,054.46
100,000.00
1962
1,768,581.64
206,638.36
100,000.00
1963
1,662,449.50
163 ,049.44
100,000.00
1964
1,657,500.55
205,507.36
100,000.00
1965
1,818,545.49
188,665.84
100,000.00
1966
1,909,03 1.70
184,432.51
110,000.00
1967
2,098,379.27
211,874.98
115,000.00
1968
2,223,758.55
263,645.77
115,000.00
1969 2,454,657.05
281,829.96
115,000.00
1970
2,536,227.65
265,364.16
115,000.00
1971
2,764,357.00
353,098.00
115,000.00
Fiscal Year Ended Aug. 31
Taxable Income
Federal Income Taxes
Dividends
Increase In Surplus
1952
$6,686.11
$2,383.37
$ - 0 -
$4,372.55
1953
17,317.53
5,195.26
- 0 -
12,068.13
1954
16,532.97
4,959.89
- 0 -
11,553.76
1955
34,691.64
12,539.65
300.00
21,840.75
1956
41,443.95
16 ,050.85
300.00
25,092.86
1957
60,795.14
26,113.47
450.00
34,256.00
1958
80,051.34
36,126.70
510.00
32,472.33
1 959
75,938.63
33,988.09
600.00
41,413.64
1960
94,650.09
43,718.05
660.00
50,349.57
1961
99,054.46
46,008.32
6 90.00
52,433.67
1962
106,638.36
49,951.99
750.00
56,013.94
1963
63,049.44
26,292.13
750.00
35,599.58
1964
105, 507.36
46,971.59
810.00
58,586.96
1965
88,665.84
36,486.74
1,500.00
51,282.17
1966
74,432.51
27,456.08
1,750.00
47,990.54
1967
96,874.98
38,228.48
1,900.00
59,230.09 l1968
148,645.77
69,173.30
2,800.00
75,350.13 l1969
166,829.96
80,903.54
3,500.00
83,649.50 l1970
150,364.16
70,000.00
7,000.00
73,842.27
1971
238,098.00
107,400.00
7,000.00
*145 Respondent determined that the compensation paid to E. L. Keuerleber in the taxable years ended August 31, 1966 and 1967, was excessive to the extent of $60,000 and $65,000, respectively, and he, therefore, allowed petitioner a deduction of $50,000 for each year. ULTIMATE FINDING OF FACT Compensation paid to E. L. Keuerleber in the taxable years ended August 31, 1966 and 1967, respectively, constituted reasonable compensation for services rendered to petitioner. OPINION Section 162(a) (1) [5] allows as a deduction reasonable salaries or compensation for personal services actually rendered. The criteria to be examined in determining whether a particular salary is reasonable are numerous and, of course, each case turns on its own facts with no one factor controlling the ultimate determination of what amount if reasonable. (C.A. 6, 1949). In that case, the court enumerated factors, collected from various decisions, which are helpful in examining reasonableness: Although every case of this kind must stand upon its own facts and circumstances, it is well settled that several basic factors should be considered *146 by the Court in reaching its decision in any particular case. Such factors include the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years. The action of the Board of Directors of a corporation in voting salaries for any given period is entitled to the presumption that such salaries are reasonable and proper. ; ; . The situation must be considered as a whole with no single factor decisive. [.] *147 The burden of demonstrating that the amount paid to E. L. Keuerleber in 1966 and 1967 was reasonable is upon the petitioner. . In instances where the employee, to whom the salary was paid, is also in control of the corporation by virtue of his shareholdings, we scrutinize the circumstances closely. . Petitioner claimed deductions for salary to E. L. Keuerleber in the taxable years ended August 31, 1966, and August 31, 1967, in the amounts of $110,000 and $115,000, respectively. Respondent has allowed a salary of $50,000 each year. Applying all of the tests of , to the entire record, we conclude that the salary paid in both years was reasonable. We appreciate respondent's concern over *148 large salaries paid to officers who own all the stock of the corporation, but the dramatic growth in sales through the efforts of E. L. Keuerleber amply demonstrates his worth to petitioner. Petitioner paid substantial amounts of Federal income tax. The parties stipulated statistics compiled by the Commissioner of Internal Revenue from all corporation income tax returns filed in the United States. Respondent used such statistics on brief to compare with petitioner's financial statistics. Petitioner objected at trial to respondent's statistics on the grounds of relevancy and materiality but did not request us to rule on the objections at trial. The statistics do not rise to the dignity of comparables. They are averages based upon income tax returns filed. The compensation claimed on the returns may be reasonable, excessive or inadequate. No doubt the Commissioner will disallow some of the deductions claimed for compensation. We hold that such statistics are irrelevant and immaterial. Because of the concessions made by respondent, Decision will be entered under Rule 155. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended. ↩
2. The term "high-style" in the swim suit industry is used to differentiate the product line from professional swim wear such as tank suits used in competitive swim meets. ↩
3. There is some dispute as to whether the petitioner purchased or took title to the building in 1963 or at a later date. Ownership of the building is not material to this case and sufficient evidence is in the record to find that the building in Huntington Station was occupied by Ocean Pool in 1963. ↩
4. "Soft goods" describes knitted swim wear and "hard goods" describes swimming pool accessories such as diving boards, pool pumps, etc. ↩
5. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; ↩